**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DEBORAH KAY SCARBRO,

    *Plaintiff*,

v.                                        CASE NO. 11-CV-10443

COMMISSIONER OF              DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB") benefits.[2] This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 14.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 31.) Plaintiff's employment history includes work as a telemarketer for a few years and as an auto assembler for 28 years. (Tr. at 131.) Plaintiff filed the instant claim on October 9, 2007, alleging that she became unable to work on April 2, 2007. (Tr. at 101.) The claim was denied at the initial administrative stages. (Tr. at 56.) In denying Plaintiff's claim, the Commissioner considered other and unspecified arthropathies as possible bases for disability. (*Id.*) On December 9, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Curt Marceille, who considered the application for benefits *de novo*. (Tr. at 12-24.) In a decision dated December 18, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on January 6, 2010. (Tr. at 8-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 30, 2010, when, after the review of additional exhibits[3] (Tr. at 240-42), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On February 3, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

---

[2] I note that Plaintiff's application is titled an application for Supplemental Security Income ("SSI") benefits, but all the remaining references in the record are to DIB benefits only.

[3] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since April 2, 2007, the alleged onset date. (Tr. at 17.) At step two, the ALJ found that Plaintiff's status post right knee surgeries, tear of radial aspect of right wrist, and obesity were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-19.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a telemarketer. (Tr. at 22-23.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff underwent surgery on her right wrist in 1993 or 1994. (Tr. at 37.) Plaintiff was also treated for osteoarthritis of the right knee by Kenton L. Waterbrook, D.O., who performed arthroscopic surgery on Plaintiff in February 2006. (Tr. at 185.) From July through August of 2006, Plaintiff underwent five Supartz injections in the right knee. (Tr. at 182-84, 186-87, 212-14.) In October 2006, Plaintiff was also treated by Dr. Waterbrook for plantar fasciitis of the right foot. (Tr. at 209-11.)

On December 2, 2006, an MRI of Plaintiff's right knee showed "stable degenerative arthritis[,]" "small right joint effusion . . . reduced in size from comparison exam[,]" "small tear in posterior horn of medial meniscus versus degenerative changes," that the "lateral meniscus appear[ed] intact[,]" and "red marrow hyperplasia"; the "rest of the exam appear[ed] unremarkable." (Tr. at 202.) On December 7, 2006, Dr. Waterbrook noted that Plaintiff's "previous

7

MRI in January showed a tear of the lateral meniscus which was not confirmed at the time of surgery, so it seems odd that it would appear normal on this examination." (Tr. at 206.)

On July 31, 2007, Jeffrey R. Levin, M.D., examined Plaintiff and diagnosed her with right carpal tunnel syndrome and history of right wrist reconstruction with significant weakness and pain. (Tr. at 174.) He noted that Plaintiff's wrist problem occurred after overuse due to extensive work with vibrating tools and air guns while working on the assembly line for General Motors. (*Id.*) He further noted that Plaintiff's knee injury arose while working reprogramming computers in cars. (*Id.*) Upon examination, Dr. Levin found "limited flexion and wrist extension in the right hand and a positive Tinel's sign." (*Id.*) However, Dr. Levin also noted that there was "no evidence of peripheral neuropathy" and "no obvious weakness in the upper extremities and/or lower extremities." (*Id.*) In addition, Dr. Levin noted that Plaintiff was able to heel/toe walk and tandem gait without difficulties. (*Id.*)

In August 2007, Plaintiff underwent a second arthroscopic surgery to address a torn medial meniscus of her right knee and was "feeling much better than she did after the first surgery." (Tr. at 188, 192-93, 203-05.)

On August 21, 2007, an MRI of the right wrist showed "[n]o evidence of fracture[,]" "suspect focal perforation TFC [triangular fibrocartilage complex] near radial margin" and "decreased volume dorsal palmar fat of questionable significance." (Tr. at 175, 200.)

In November 2007, Plaintiff was evaluated by Kevin Chung, M.D., who found that there did "not appear to be any carpal instability[,]" that Plaintiff had "intact sensation to light touch in the radial, median, and ulnar nerve[,]" that "[c]ompression at the carpal canal [did] not reproduce any symptoms[,]" that "Tinel's sign is negative as is Phalen's testing," that Plaintiff had "full flexion and extension of all digits, and on motor nerve testing she has 5/5 on the radial, median,

8

and ulnar distributions." (Tr. at 236.) Dr. Chung also noted that "radiographs of her hand were obtained today and show no arthritic changes at the wrist joint, and no other abnormalities." (*Id.*) Dr. Chung found that Plaintiff's "history and physical exam are not consistent with carpal arthritis," and he concluded that "it is unclear the etiology of her wrist pain." (*Id.*)

On January 16, 2008, Plaintiff was examined by Elaine Kountanis, M.D., who concluded that Plaintiff's weight and "poor muscle conditioning" "adds to her pain" in her right wrist, shoulders and knees. (Tr. at 224.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on January 23, 2008, concluded that Plaintiff is able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about six hours and sit for about six hours of an 8-hour workday, and is unlimited in her ability to push or pull. (Tr. at 227.) The assessment also concluded that Plaintiff is frequently limited in all the postural areas except that she is occasionally limited in the ability to climb ladders and kneel. (Tr. at 228.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 229-30.) The assessment also concluded that Plaintiff's statements regarding the severity of her symptoms were only "partially credible." (Tr. at 231.)

At the administrative hearing, Plaintiff testified that she can walk at least a block on a good day, about one-half a block on a bad day, and that she can stand for about 20 minutes before she needs to lean on something or sit down, "[i]f there was a place to do so." (Tr. at 39-40.) Plaintiff also testified that she can lift a gallon of milk, is able to cook, does some cleaning, is able to put laundry in the washing machine, shop for groceries, watch television, and that she was able to go on vacation to Florida, Connecticut, and South Carolina in the last couple of years. (Tr. at 40-41, 44.) Plaintiff further testified that she is able to attend her daughter's school functions, such as parent-teacher conferences and dance recitals, that she is able to pick her daughter up from Girl

9

Scouts, that she is able to attend church, and to see friends socially for lunch or dinner once a week. (Tr. at 42-43.)

Plaintiff testified that she had difficulty performing the job of telemarketer because her "wrist would kind of cramp up if [she] had multiple calls." (Tr. at 44-45.) Plaintiff also testified that she naps at least one-half hour to an hour a day and that she elevates her knee in a recliner chair throughout the day. (Tr. at 45-46.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who is limited to sedentary work and is "unable to perform any prolonged standing or walking." (Tr. at 51.) The VE responded that such a person could perform Plaintiff's past relevant work as a telemarketer. (Tr. at 51.) In addition, the VE testified that such a person could perform the 2,400 telephone information clerk, 2,320 surveillance monitor, 20,000 inspector and 1,394 final assembler jobs available in Michigan. (Tr. at 51-52.) The ALJ then asked the VE to assume that same person but reaching, handling, fingering all were restricted to occasional use. The VE testified that such a person could not perform the job of telemarketer because that requires frequent fingering; however, such a person could still perform the 1,240 call-out operator jobs available in Michigan. (Tr. at 52.)

  **F. Analysis and Conclusions**

  **1. Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19-22.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job

10

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred by failing to properly evaluate Plaintiff's credibility, thereby forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 10 at 6-11.) Alternatively, Plaintiff seeks remand under 42 U.S.C. § 405(g) based upon Dr. Awerbuch's examination of March 2010 (Tr. at 240-42), which contradicted the findings of Dr. Kountanis and which revealed reduced range of motion of the right knee and right wrist and weakness of grasp and pinch. (Doc. 10 at 7-13.)

11

### a. Credibility Determination

Plaintiff contends that the ALJ erred by failing to properly evaluate Plaintiff's credibility, thereby forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 10 at 6-11.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such

12

severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

    (i)    [D]aily activities;

    (ii)    The location, duration, frequency, and intensity of . . . pain;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)    Any measures . . . used to relieve . . . pain.

13

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that the ALJ considered the appropriate factors and that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding her level of pain was not fully credible. (Tr. at 19-22.) The Court is likewise unable to find in this record objective medical evidence supporting a finding that Plaintiff is disabled within the meaning of the Social Security Act. Although Plaintiff does have arthritis in her right knee, she has been treated with injections and arthroscopic surgery, but has not yet undergone knee replacement surgery. (Tr. at 182-84, 186-87, 212-14.) In addition, her degenerative knee condition has been described as "stable" and, after Plaintiff's second arthroscopy, she was "feeling much better than she did after the first surgery." (Tr. at 188, 192-93, 202, 203-05.)

While Plaintiff has been diagnosed with carpal tunnel syndrome by one physician, Dr. Levin (Tr. at 174), that same physician also noted that there was "no evidence of peripheral neuropathy" and "no obvious weakness in the upper extremities and/or lower extremities." (*Id.*) Another physician, Dr. Chung, found that there "do[es] not appear to be any carpal instability[,]" that Plaintiff had "intact sensation to light touch in the radial, median, and ulnar nerve[,]" that "[c]ompression at the carpal canal does not reproduce any symptoms[,]" that "Tinel's sign is negative as is Phalen's testing," that Plaintiff had "full flexion and extension of all digits, and on motor nerve testing she has 5/5 on the radial, median, and ulnar distributions." (Tr. at 236.) Dr. Chung also noted that "radiographs of her hand were obtained today and show no arthritic changes at the wrist joint, and no other abnormalities." (*Id.*) Dr. Chung found that Plaintiff's "history and physical exam are not consistent with carpal arthritis," and thus he concluded that "it is unclear

14

the etiology of her wrist pain." (*Id.*) In addition, the RFC assessment also concluded that Plaintiff's statements regarding the severity of her symptoms were only "partially credible." (Tr. at 231.)

Finally, Plaintiff's own testimony reveals a level of activity inconsistent with her complaints of disability. Plaintiff testified that she can lift a gallon of milk, is able to cook, does some cleaning, is able to put laundry in the washing machine, shop for groceries, watch television, was able to go on vacation to Florida, Connecticut, and South Carolina in the last couple of years, is able to attend her daughter's school functions, is able to pick her daughter up from after-school activities, is able to attend church, and is able to see friends socially once a week. (Tr. at 40-43.) I therefore suggest that the ALJ's credibility finding is supported by substantial evidence.

### b. Sentence Six Remand

Alternatively, Plaintiff seeks remand under 42 U.S.C. § 405(g) based upon Dr. Awerbuch's examination of March 2010 (Tr. at 240-42), which contradicts the findings of Dr. Kountanis and which reveals reduced range of motion of the right knee and right wrist and weakness of grasp and pinch. (Doc. 10 at 7-13.)

The Supreme Court only recognizes two kinds of remands involving social security cases: those pursuant to sentence four and those pursuant to sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991); *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). The Supreme Court concluded that Congress's explicit delineation in § 405(g) regarding circumstances under which remands are authorized clearly showed that Congress intended to limit the district court's authority to enter remand orders in these two types of cases. *Melkonyan*, 501 U.S. at 100. Sentence four allows a district court to remand in conjunction with a judgment affirming, modifying or reversing the Commissioner's decision. *Id*. at 99-100. Sentence six allows the district court to remand in

light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Id.* at 100.

The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

Plaintiff seeks to introduce the results of an examination performed by Gavin Awerbuch, M.D., on March 30, 2010. (Tr. at 240-42.) Dr. Awerbuch found:

> On neurological exam, [Plaintiff] is alert and oriented x3. Cerebellar coordination appears intact with finger-to-finger and rapid alternating movements. Deep tendon reflexes are symmetrical. Cranial nerves II through XII are grossly intact. Babinski is downgoing. Straight leg raise is negative. There is weakness of grasp and weakness of pinch. Positive Tinel and Phalen signs at the wrists bilaterally. She is able to walk on tiptoe and heels. She is able to heel-to-toe walk. She is able to squat and recover.

(Tr. at 241.) Dr. Awerbuch concluded that Plaintiff has bilateral carpal tunnel syndrome, excessive daytime sleepiness, right knee derangement, and osteopenia. (*Id.*) Dr. Awerbuch recommended an EMG to identify the nature of her upper extremity issues, a sleep apnea test to address her excessive daytime sleepiness, and prescribed medication for her pain. (Tr. at 242.)

Plaintiff has not proffered any reason why she could not have sought an examination by Dr. Awerbuch before the hearing and presented that evidence at the hearing. Therefore, I suggest that Plaintiff has not shown that the evidence is "new." *See Ferguson, supra.* In addition, since Dr. Awerbuch is not a treating physician, the evidence appears to have been generated for the purpose of proving disability such that good cause has not been shown. *See Payne, supra.* Finally, I suggest that the evidence is not material because there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357. Dr. Awerbuch's findings are not significantly different from the conditions treated and the objective medical evidence of record. I therefore suggest that Plaintiff has not satisfied the requirements needed for a sentence six remand.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                             s/ Charles E Binder
                                             CHARLES E. BINDER
Dated: February 6, 2012                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: February 6, 2012                          By     s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder